UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ASHLEY ROSE SCHANDEL, | CASE NO. 5:25-CV-00921-CAB |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

INTRODUCTION

Plaintiff Ashley Schandel challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated May 7, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Ms. Schandel applied for SSI on May 22, 2008. (Tr. 245). She alleged she became disabled beginning May 19, 2008, due to conduct disorder and attention deficit hyperactivity disorder (ADHD). (Tr. 123). Ms. Schandel was deemed disabled on September 12, 2008. (*Id.*).

On July 9, 2018, Ms. Schandel's status was reviewed after she turned 18, *see* 42 U.S.C. § 1382c(a)(3)(H)(iii), and she was determined no longer disabled. (Tr. 163). After her claim was denied on reconsideration, Ms. Schandel requested a hearing before an administrative law judge.

1

(Tr. 180-81, 187). On April 2, 2020, Ms. Schandel (without the aid of a representative) and a vocational expert (VE) testified before the ALJ. (Tr. 100-21). On September 25, 2020, the ALJ determined Ms. Schandel was no longer disabled after May 28, 2018. (Tr. 11-23). On July 16, 2021, the Appeals Council denied Ms. Schandel's request for review. (Tr. 1-3). Ms. Schandel then sought judicial review in this court and, pursuant to a joint stipulation, the court remanded the matter for further proceedings. (Tr. 714; *see also Schandel v. Comm'r of Soc. Sec.*, 5:21-cv-1690-CAB (N.D. Ohio Apr. 7, 2022)).

On June 1, 2023, Ms. Schandel (now represented by counsel) and a new VE testified before a different ALJ. (Tr. 640-75). On June 20, 2023, the new ALJ again determined Ms. Schandel was not disabled after May 28, 2018. (Tr. 615-26). On March 14, 2025, the Appeals Council declined Ms. Schandel's request for review, making the second hearing decision the final decision of the Commissioner. (Tr. 605-08; *see also* 20 C.F.R. § 416.1481). Ms. Schandel timely filed this action on May 7, 2025. (ECF #1).

FACTUAL BACKGROUND

I.     **Personal and Vocational Evidence**

Ms. Schandel was 8 years old on her claimed disability date, 20 years old at the first hearing, and 24 years old at the second hearing. (*See* Tr. 245, 104, 638). She has a GED. (Tr. 651). She has no past relevant work. (*See* Tr. 625).

II.     **Relevant Medical Evidence**[1]

In November 2018, Ms. Schandel underwent a consultative psychological examination with David Bousquet, M.Ed., in connection with her disability re-evaluation. (Tr. 556-63). During the interview, she had difficulty providing details, so Mr. Bousquet had to reword and simplify questions. (Tr. 560). Mr. Bousquet observed "she tended to process information very slowly." (*Id.*). Mr. Bousquet diagnosed Ms. Schandel with "unspecified" ADHD, adjustment disorder with mixed anxiety and depressed mood, "unspecified" impulse control disorder, and "suspected" borderline intellectual functioning. (Tr. 562).

Since her disability re-evaluation, Ms. Schandel has received medication for treatment of her anxiety and depression with multiple adjustments to her medications. (*See, e.g.*, Tr. 1105, 1100, 1089, 1084, 1074, 1071, 1067, 1134, 1131, 1534, 1528) (ordered chronologically). Over early 2020, Ms. Schandel tried multiple medications but experienced no benefit or too severe side effects. (*See, e.g.*, Tr. 1111, 1105, 1084). By July, she reported her medication helped. (Tr. 1074). In August, she reported her medication was causing headaches, but she felt the benefits outweighed the side effects. (Tr. 1071). She felt depressed in September, but her medications were reportedly helping control her anxiety and her sleep had improved, though one night's sleep was interrupted. (Tr. 1067). By October, her depression and anxiety were "low." (Tr. 1062). In December, she had a good mood and no medication side-effects. (Tr. 1183).

By July 2021, Ms. Schandel was prescribed new medication for her anxiety (Tr. 1135), though the dosage was adjusted to reduce side effects (Tr. 1131). In September, she "likely

---

[1]     Although Ms. Schandel faces physical impairments (*see* Tr. 617), her arguments challenge the ALJ's analysis of her mental limitations (*see* ECF #10 at PageID 2310-22). I thus summarize the medical record as it concerns only those limitations.

need[ed]" a medication adjustment, but the note does not explain further (*See* Tr. 1126). The next month, she reported "feel[ing] good on current meds" though she still felt anxious. (Tr. 1218).

There is little record between 2021 and early 2023 of psychological medication changes. But by March 2023, Ms. Schandel had tried six different medications at various times to help her symptoms or relieve side effects. (*See* Tr. 1534). She was prescribed one antidepressant and two anxiety medications. (Tr. 1536). One of her anxiety medications was stopped in April because it made her "tired and mean" and she was prescribed a new medication for obsessive-compulsive disorder. (*See* Tr. 1528, 1530).

In addition to medication, Ms. Schandel attended regular counseling appointments for her feelings of depression and anxiety, being overwhelmed, irritable, demotivated, or hopeless, as well as managing as a young, single mother of two children with an unstable relationship with the children's father. (*See, e.g.*, Tr. 1189, 1177, 1167, 1155, 1128, 1222, 1203, 1307, 1592, 1590, 1584, 1580, 1576, 1349, 1347, 1638) (ordered chronologically). In one such appointment, Ms. Schandel described working for the first time and attending GED classes, which left her feeling very tired and overwhelmed. (Tr. 1215). Working exacerbated her anxiety, more so when she had to communicate with the public. (*Id.*). She would isolate herself at work and not talk with her coworkers. (*Id.*). After a few months working 20 hours a week, she reported getting into a better routine, gaining more confidence and socializing with coworkers, but she struggled receiving criticism and felt targeted by her supervisor. (Tr. 1307, 1316; *see also* Tr. 1604). She would be very distraught and cry when she got in trouble at work for issues like timekeeping. (Tr. 1573). When she moved to a new job at a retirement home, being watched by residents would make her feel anxious and rushed. (Tr. 1576). Working eight hours for four days a week left her feeling very

4

tired, overwhelmed, sensitive, and irritable. (Tr. 1597, 1349). These feelings, together with paranoia and the pressures of caring for her children, led her to quit her job at the end of 2022. (Tr. 1347). Though she was typically not suicidal (*see* Tr. 1349, 1189, 1170, 1146, 1128), in two appointments in early 2023 she described experiencing a passive death wish. (Tr. 1347, 1341).

Ms. Schandel's depression generally ranged from "severe" to "moderately severe" as indicated by regular screenings with a patient health questionnaire (PHQ-9). (*See* Tr. 1125 ("severe depression" indicated), 1134 (moderately severe), 1131 (severe), 1125 (same)). But in December 2021 and again in February 2022, she reported "not at all" feeling various indicators for depression. (Tr. 1209, 1313). Then in March and April 2022, her depression was rated moderate. (Tr. 1310, 1304). Her depression was rated severe in January 2023 (Tr. 1345) and moderately severe in April (Tr. 1531).

In November 2022, Ms. Schandel presented for a neuropsychological evaluation by Carla Arlien, Ph.D., for diagnosis and treatment planning. (Tr. 1331-34). Ms. Schandel reported working as a cleaner for the past four to five months. (Tr. 1329). She reported a history of ADHD, for which she previously took medication. (*Id.*). She further reported symptoms of anxiety, depression, panic attacks, mood swings, being worrisome, irritability, and sleep difficulties. (*Id.*). She described difficulties with being around other people, short-term-memory loss, maintaining attention, being easily distracted, and frequently misplacing items. (*Id.*). Dr. Arlien diagnosed Ms. Schandel with generalized anxiety disorder, major depressive disorder that is recurrent and severe but without psychotic features, and an unspecified mental disorder "due to known physiological condition." (Tr. 1334).

### III.    Relevant Opinion Evidence

On November 14, 2018, as part of her disability re-evaluation, Ms. Schandel underwent a consultative psychological examination with Mr. Bousquet. (Tr. 556-63). He opined Ms. Schandel would be expected to have "problems with being able to understand, carry out, and remember job instructions and duties"; "difficulties to maintain attention and concentration and also her abilities [*sic*] to maintain an acceptable persistence and pace in the work setting"; "difficulties with her abilities to conform to social expectations in a work setting"; and "difficulties with her abilities to respond appropriately to work place stresses and pressures." (Tr. 562-63).

On November 27, 2018, state agency psychological consultant, Karla Delcour, Ph.D., opined Ms. Schandel was moderately limited in her ability to understand, remember, or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage herself. (Tr. 151). Dr. Delcour also opined Ms. Schandel was moderately limited in her abilities to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) complete a normal workday and workweek without interruption from psychological symptoms and perform at a consistent pace, (5) interact appropriately with the general public, (6) accept instructions and respond appropriately to criticism from supervisors, (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and (8) respond appropriately to changes in the work setting. (Tr. 135-36). In all other areas, Dr. Delcour opined Ms. Schandel was not significantly limited. (*Id.*).

### IV.    Relevant Testimonial Evidence

Ms. Schandel explained she could not work because of her anxiety and difficulty with routines, following instructions, staying on-task, and maintaining pace. (*See* Tr. 653, 663-64). She

becomes anxious when around other people and experiences almost daily panic attacks that last a few minutes and cause chest pain and lightheadedness. (Tr. 653-54). She gets anxious easily, including when alone in her home or when her children startle her by walking behind her. (Tr. 655). Her mood will swing from depression to rage. (Tr. 654). She experiences crying spells and irritability almost daily. (Tr. 654). She also experiences symptoms of obsessive-compulsive disorder such as "freaking out" if her home is dirty, mentally tracing the lines of objects, and looking out her window all the time. (*See* Tr. 655-56, 665). She also experiences PTSD symptoms of nightmares and daily flashbacks. (Tr. 656). Her anxiety, together with her PTSD, hinder her in falling asleep and interrupt what sleep she can get. (Tr. 657). She gets frustrated doing daily chores and often gets help with shopping for groceries, paying bills, and doing laundry. (Tr. 650-51, 666).

Ms. Schandel has tried different psychological medications and at the time of the hearing was switching medications. (Tr. 657; *compare* Tr. 1530 (medication list dated two months before the hearing)). So far, her medications have either not helped or caused significant side effects, leading her psychiatrist to stop prescribing them. (Tr. 657, 658).

Ms. Schandel received her driver's license in 2022 and drives short distances, including to the park or going for fast food. (Tr. 651, 661, 665-66). She had the driver's exam read to her. (Tr. 666). She earned her GED, although certain sections of the exam took her three to five attempts to pass. (Tr. 651-52). She lives with her then four-year-old son and two-year-old daughter and the children's father, with other family members sometimes helping with childcare. (Tr. 650). She usually has help when grocery shopping and ordinarily buys microwaveable frozen meals. (Tr. 651). She and her children often watch television, though she often cleans while doing so. (Tr. 661).

STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

§ 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

The Commissioner ordinarily follows a five-step evaluation process—found at 20 C.F.R.

§ 416.920—to determine whether a claimant is disabled:

1.    Was claimant engaged in a substantial gainful activity?

2.    Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3.    Does the severe impairment meet one of the listed impairments?

4.    What is claimant's residual functional capacity and can claimant perform past relevant work?

5.    Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this sequential analysis, the claimant has the burden of proof through Step Four.

*See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the

Commissioner at Step Five to prove whether the claimant has the residual functional capacity

(RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's

RFC, age, education, and past work experience to determine whether the claimant could perform

other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do

other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R.

§ 416.920(c)-(f); *see also Walters*, 127 F.3d at 529.

THE ALJ'S DECISION

The ALJ omitted Step One because Ms. Schandel received SSI as a child, and the ALJ was redetermining whether Ms. Schandel remained disabled after age 18. (Tr. 617; *see also* 20 C.F.R. § 416.987(b)). At Step Two, the ALJ identified the following severe impairments:

> [C]hondral defect of the right patella, Hoffa's fat pad disease and maltracking of the right patella, mild central disc protrusion, facet hypertrophy, and levoscoliosis of the lumbar spine with sciatica, depressive disorder/bipolar disorder, adjustment disorder with mixed anxiety and depressed mood, anxiety disorder, obsessive-compulsive disorder, paranoid personality disorder, unspecified impulse-control disorder, posttraumatic stress disorder, attention deficit hyperactivity disorder, and borderline intellectual disorder.

(Tr. 617). At Step Three, the ALJ found Ms. Schandel's impairments did not meet or medically equal the requirements of a listed impairment, namely Listings 12.04, 12.05, 12.06, 12.08, 12.11, and 12.15. (Tr. 619-21).

At Step Four, the ALJ determined Ms. Schandel's RFC as follows:

> After careful consideration of the entire record, I find that since May 28, 2018, the claimant has had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except occasionally climb ramps and stairs, climb ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl; can perform simple, routine, and repetitive tasks, but cannot perform tasks which require a high production-rate pace (for example, such as assembly-line work), and can make only simple work-related decisions; can have ordinary and customary interaction with supervisors, but should be limited to occasional and superficial interaction with coworkers and the general public ("superficial" meaning no sales, arbitration, negotiation, conflict resolution, or confrontation, no group, tandem, or collaborative tasks, and no management, direction, or persuasion of others); and can respond appropriately to occasional changes in a routine work setting, as long as any such changes are easily explained and/or demonstrated in advance of their gradual implementation.

(Tr. 621) (cleaned up). Ms. Schandel did not have past relevant work, so the ALJ proceeded to Step Five. (Tr. 625). At Step Five, the ALJ concluded that as of May 28, 2018, Ms. Schandel could work as a cleaner/housekeeper, marker, or routing clerk. (*See* Tr. 625). Thus, the ALJ concluded Ms. Schandel was not disabled since May 28, 2018. (Tr. 626).

9

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.,* 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.,* 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).

10

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Schandel makes varying arguments challenging the ALJ's analysis of the relevant listings and the RFC. For organizational clarity, I group the arguments by step in the sequential evaluation.

## I.    Step Three

Ms. Schandel argues the ALJ erred at Step Three in finding she did not meet the requirements of a listed impairment. (*See* ECF #10 at PageID 2310). But within that issue, she meanders through at least six discrete arguments without much organization:

1.    The ALJ's finding lacked substantial evidence because Ms. Schandel's benefits were terminated for her failure to cooperate with the disability determination process, not because of an improvement in her condition. (*Id.* at PageID 2310-11).

2.    Contrary to the ALJ's finding, the medical evidence established Ms. Schandel has marked limitations in her abilities to understand, remember, and apply information; interact with others; and concentrate, persist, or maintain pace. (*Id.* at PageID 2311-16).

3.    The ALJ failed to properly evaluate Ms. Schandel's intellectual deficits and performed a perfunctory analysis at Step Three. (*Id.* at PageID 2316-17).

4.    The ALJ was bound by the findings in Ms. Schandel's childhood disability determination by Social Security Acquiescence Ruling 98-4p. (*Id.* at PageID 2318).

5.    The ALJ did not include a narrative discussion of how the evidence supported the conclusions as required by Social Security Ruling 96-8p, focused on the benign or mildly adverse findings, and disregarded contrary evidence. (*Id.* at PageID 2318-19).

6.    The ALJ did not build an accurate and logical bridge between the evidence and the result. (*Id.* at PageID 2319).

The Commissioner addresses most, but not all the arguments in the stream of thought and not in the order Ms. Schandel discusses them. (*See* ECF #12 at PageID 2334-38). In the interests of clarity and thoroughness, I separately address each concrete argument I have identified. None warrant remand.

### A.    Benefits termination for non-cooperation

Ms. Schandel begins by arguing: "According to the state agency, her benefits were ceased due to failure to cooperate. Thus, cessation [of benefits] was not based on an improvement in her symptoms. Thus, the ALJ's finding that Plaintiff was no longer disabled was not supported by substantial evidence necessitating a remand of this matter." (ECF #10 at PageID 2311).

The Commissioner correctly points out that this argument is an incomplete account of the administrative process. (ECF #12 at PageID 2336). True, when Ms. Schandel's benefits were re-evaluated after she turned 18, she "failed to agree to attend an examination and was ceased for failure to cooperate." (Tr. 137; *see also* Tr. 163). But Ms. Schandel appealed that determination,

12

attended a consultative examination, and received a decision from the state agency based on her condition after she turned 18. (Tr. 130-55). Then, she received two ALJ determinations based on her condition after she turned 18. (Tr. 11-23, 615-26). Thus, to say Ms. Schandel's "benefits were ceased due to failure to cooperate" is, at best, an incomplete account and omits the multiple determinations based on her symptoms after turning 18.

Moreover, this argument does not support remand. Ms. Schandel does not explain how the termination of benefits for noncooperation in 2018 affected in any way the second ALJ's 2023 determination. The ALJ determined an RFC for Ms. Schandel based on 7.5 pages of discussion of her symptoms after turning 18. (*See* Tr. 17-24). Even if Ms. Schandel did demonstrate her condition was the exact same before and after her 18th birthday, different standards control disability for a child and for an adult. *Contrast* 20 C.F.R. § 416.924 (standard for children) *with* 20 C.F.R. § 416.920 (standard for adults). A claimant could be disabled as a child and not disabled as an adult even if there was no change in symptoms. *See id.* § 416.987(a)(2) ("We may find that you are not now disabled [after age 18] even though we previously found that you were disabled.").

I thus decline to recommend remand on this basis.

## B.   Paragraph B Criteria

Ms. Schandel then argues she should have been found disabled because the evidence showed she has marked limitations in her abilities to understand, remember, and apply information; to interact with others; and to concentrate, persist, or maintain pace and thus she satisfied the criteria for various listed impairments. (*See* ECF #10 at PageID 2311-16). Within this overall argument, Ms. Schandel makes related arguments that the ALJ misread Mr. Bousquet's report (*id.* at PageID 2316), acted "outside his zone of choice" (*id.* at PageID 2317), "failed to

13

properly evaluate Ms. Schandel's intellectual deficits" under Listing 12.11 (*id.* at PageID 2316), and the "matter should be remanded where the ALJ's analysis contained deficiencies" (*id.*). Despite the different packaging, each argument reduces fundamentally to an assertion the evidence supported greater limitations than the ALJ found. The Commissioner does not respond argument-by-argument, instead contending substantial evidence supports the ALJ's findings that Ms. Schandel faces no more than moderate limitations in those areas. (ECF #12 at PageID 2334-36).

At Step Three of the disability evaluation process, if the claimant shows her impairment meets or equals a listed impairment, she is deemed disabled. 20 C.F.R. § 416.920(d); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F.App'x 426, 432 (6th Cir. 2014). The Listing of Impairments—found in 20 C.F.R. Pt. 404, Subpt. P, App'x 1—defines impairments the SSA considers "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). The claimant has the burden to "point to specific evidence that demonstrates she reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 F.App'x at 432-33 (collecting cases).

Ms. Schandel contends she meets the criteria in Paragraph B of Listings 12.04 (depressive, bipolar, and related disorders), 12.05 (intellectual disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma- and stressor-related disorders). Those listings share the same Paragraph B criteria, with one exception not at issue here.[2] *See* 20 C.F.R. Pt. 404,

---

[2]       Paragraph B of Listing 12.05 (intellectual disorders) has two additional criteria: the claimant has "significantly subaverage general intellectual functioning" through IQ testing and the intellectual disorder must have begun before the claimant turned 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05(B)(1), (3). The ALJ made findings on those criteria (Tr. 619), but Ms. Schandel

14

Subpt. P, App'x 1 §§ 12.00(A)(2)(b), 12.04(B), 12.05(B)(2), 12.06(B), 12.08(B), 12.11(B), 12.15(B). The shared Paragraph B criteria require Ms. Schandel have one "extreme" limitation or two "marked" limitations across four areas of mental functioning. *Id.* The four areas of mental functioning are the abilities to (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* § 12.00(E). The Listings use a five-point rating scale of limitations based on a claimant's ability to function independently, appropriately, and effectively in those areas, with moderate, marked, and extreme being the three highest ratings. *Id.* § 12.00(F)(2). A "moderate" limitation denotes "fair" functioning in an area, a "marked" limitation denotes the functioning is "seriously limited," and an "extreme" limitation denotes no ability to function. *See id.* § 12.00(F)(2)(c)-(e).

Ms. Schandel argues the ALJ's findings of moderate limitations in each area were contrary to the evidence and that the childhood disability determination, adult psychological evaluations, prior administrative medical findings, and Mr. Bousquet's report all demonstrate she has marked limitations. (*See* ECF #10 at PageID 2311-16). The ALJ analyzed much of the evidence on which Ms. Schandel relies, focusing primarily on Mr. Bousquet's report for the Paragraph B findings. (*See* Tr. 618-21). But the ALJ considered the prior administrative findings too, writing at the start: "No treating or examining physician or psychologist has indicated that the claimant has an impairment equivalent in severity to the criteria of any of any listed impairment." (Tr. 618). The state agency

---

does not mention them in her brief and instead discusses just the shared Paragraph B criteria. I thus construe her argument not to challenge the ALJ's findings for those additional criteria. To the extent Ms. Schandel makes such an argument, it is forfeited by her failure to develop it. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")

psychological consultant opined Ms. Schandel has no more than moderate limitations in the four

Paragraph B areas. (Tr. 151). In concluding Ms. Schandel is moderately limited in adapting and

managing herself, the ALJ also considered Ms. Schandel's testimony about driving short distances,

living with her two children, and having assistance from the children's father. (Tr. 619; *see also* Tr.

650-51, 661, 665-66). Courts have found each of these to be substantial evidence. *See Kent v.

Comm'r of Soc. Sec.*, 142 F.Supp.3d 643, 650 (S.D. Ohio 2015) (finding a consultative examiner's

opinion is substantial evidence at Step Three); *Vega v. Comm'r of Soc. Sec.*, No. 1:23-cv-956, 2024

WL 5400280, at *10 (N.D. Ohio Jan. 22, 2024) (same for prior administrative findings), *report and

recommendation adopted*, 2024 WL 5400241 (N.D. Ohio Mar. 11, 2024); *Edwards v. Comm'r of Soc.

Sec.*, No. 3:22-cv-597, 2023 WL 2988373, at *13 (N.D. Ohio Mar. 10, 2023) (a claimant's daily

activities can be substantial evidence at Step Three if supported by other evidence), *report and

recommendation adopted*, 2023 WL 3866333 (N.D. Ohio June 7, 2023).

Ms. Schandel contends the "the ALJ incorrectly concluded that [Mr. Bousquet's opined

limitations] did not present marked or severe limitations" because "[t]he evidence established

Plaintiff was seriously limited in her ability to function in at least two domains." (ECF #10 at

PageID 2316). But Mr. Bousquet opined Ms. Schandel would have "difficulties" or "problems" in

the four areas of functioning. (*See* Tr. 562-63). The mere fact the ALJ could have drawn different

conclusions from Mr. Bousquet's opinion—whether "difficulties" or "problems" implied moderate

or marked limitations—does not mean the ALJ cannot chose the lesser limitation. *See Hammer v.

Comm'r of Soc. Sec.*, No. 3:25-cv-1119, 2026 WL 177678, at *7 (N.D. Ohio Jan. 22, 2026)

(concluding state agency consultant's opinion is substantial evidence to find the claimant limited

16

to superficial interactions with supervisors only despite the opinion limiting the claimant to superficial interactions with "others").

Even if Ms. Schandel can point to substantial evidence supporting her conclusion (*i.e.*, that she is markedly limited in two areas of mental functioning), this alone does not entitle her to remand. She must show the ALJ's conclusions are not supported by substantial evidence and that requires more than "pointing to evidence of the record that supports her position." *Greene ex rel. Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Ms. Schandel's many arguments amount to just that; under her view of the evidence, greater limitations were warranted. But the court cannot try the case de novo, reweigh the evidence, and arrive at a different decision than the ALJ. *Brainard*, 889 F.2d at 681.

Ms. Schandel also declares: "In this matter the ALJ's conclusions that Plaintiff had moderate limitations in each of the 'B' criteria was outside his 'zone of choice'" because, under her view of the evidence, greater limitations were warranted. (ECF #10 at PageID 2317). But deciding which path to take when the evidence "can go either way" falls squarely within the Commissioner's zone of choice to act free of court interference. *See Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Last, Ms. Schandel argues the ALJ "failed to properly evaluate Ms. Schandel's intellectual deficits" for Listing 12.11 and "a matter should be remanded where the ALJ's analysis contained deficiencies." (ECF #10 at PageID 2316) (citing *Butcher v. Comm'r of Soc. Sec.*, No. 1:20-cv-1230, 2021 WL 1878120, at *15 (N.D. Ohio May 3, 2021), *report and recommendation adopted,* 2021 WL 1858367 (N.D. Ohio May 10, 2021)). Ms. Schandel does not explain how the ALJ erred in evaluating her impairments but merely restates the state agency reviewer's findings (that found no

more than moderate limitations) and declares they were corroborated by school records and Mr. Bousquet's opinion. (*Id.*). It is unclear from that discussion whether Ms. Schandel advances a new freestanding standard of review to correct "deficiencies" or if she is re-packaging her earlier arguments that the ALJ should have adopted her view of the evidence. *Butcher* simply uses "deficiencies" to refer to errors the court identified in the previous paragraph. *See* 2021 WL 1878120, at *15. This single passing usage of the word does not suggest—under any good faith reading—that an ALJ may be reversed because of deficiencies and so I presume Ms. Schandel's counsel, as an experienced practitioner in this court, was simply unclear in her writing. I also find no fault in the ALJ's analysis of Listing 12.11 as that listing requires the claimant meet the same Paragraph B criteria as the other listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.11(B). Because Ms. Schandel did not qualify under Paragraph B of Listing 12.11, there was no reason for the ALJ to address the issue further.

I thus decline to recommend remand on any of these bases.

### C.    Perfunctory analysis and failure to develop the record

After discussing the Listings, Ms. Schandel argues "the ALJ offered only a perfunctory analysis of what he considered to be the relevant Listings and related functional limitations" and "the ALJ failed to properly consider the relevant evidence and failed to provide sufficient information so this Court can facilitate meaningful judicial review." (ECF #10 at PageID 2317). These arguments are more of a challenge to the sufficiency of the ALJ's explanation than of the evidence supporting that explanation. The Commissioner does not directly address this argument.

Ms. Schandel is correct that an ALJ's failure to articulate a basis for the Step Three finding can be reversible error. (*Id.*) (citing *Illitch v. Comm'r of Soc. Sec.*, No. 1:17-cv-835, 2019 WL 1324050,

at *10 (S.D. Ohio Mar. 25, 2019)). The court in *Illitch* found the ALJ's explanation insufficient where:

> [T]he ALJ found at step three that plaintiff's degenerative disc disease did not meet or medically equal Listing 1.04 solely because "he does not have evidence of nerve root compression or the requisite neurological deficits." The ALJ did not elaborate on his finding at step three. The ALJ did not perform any analysis at step three and did not identify the evidence on which he relied in determining plaintiff's impairments did not meet or equal the severity of § 1.04.

2019 WL 1324050, at *9.

But *Illitch* is inapplicable here because the ALJ *did* elaborate on his conclusions that Ms. Schandel's mental impairments, singly or in combination, did not meet the criteria of the relevant listings. Over about three pages, the ALJ addressed each of the Paragraph B criteria, concluded Ms. Schandel had no more than moderate limitations in each area of functioning, and supported those findings with substantial evidence from Mr. Bousquet's consultative examination and Ms. Schandel's testimony about her own daily activities. (Tr. 618-21). Ms. Schandel does not explain how this analysis was perfunctory beyond simply declaring it so. Thus the argument is forfeited even if *Illitch* applied. *See McPherson*, 125 F.3d at 995-96.

Ms. Schandel also implies the ALJ did not fulfill "the obligation to conduct a full and fair inquiry into each claim and develop the record as to all components of the applicable Listings." (ECF #10 at PageID 2317). While the claimant has the burden of proof through Step Four, *see Walters*, 127 F.3d at 529, the ALJ must ensure that every claimant receives "a full and fair hearing." *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). That duty is heightened where a claimant appears without counsel, is incapable of presenting an effective case, or is unfamiliar with hearing procedures. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). But no heightened duty applies to claimants represented by counsel. *Stevenson v. Kijakazi*,

No. 5:20-cv-2688, 2022 WL 4551590, at *13 (N.D. Ohio Sept. 29, 2022). While Ms. Schandel appeared without counsel in the first hearing before the ALJ (Tr. 96, 98-100), she appeared with counsel in the second hearing (*see* Tr. 640). Thus, no heightened duty to develop the record applied in the second hearing and "the ultimate burden of proving entitlement to benefits lies with the claimant." *See Moats*, 42 F.4th at 563. Ms. Schandel does not name any particular problems with the second hearing, identify missing key evidence, suggest what new evidence would support a finding of disability, or otherwise explain how the ALJ did not fully develop the record such that the second hearing was unfair. This potential argument is thus forfeited by her failure to develop it. *See McPherson*, 125 F.3d at 995-96.

I thus decline to recommend remand on either of these bases.

### D.       Whether the ALJ was bound by the 2018 finding of disability

Fourth, Ms. Schandel argues her "symptoms had not changed since she was found disabled in 2018" and "there was a prior finding by Social Security that she had marked limitations in acquiring and using information and attending and completing tasks." (ECF #10 at PageID 2318). She relies on Acquiescence Ruling (AR) 98-4(6) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). The Commissioner responds that courts have held both AR 98-4(6) and *Drummond* inapplicable when re-evaluating an adult claimant who was found disabled as a child.

In *Drummond*, the Sixth Circuit concluded that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d at 842. In AR 98-4(6), the Commissioner adopted *Drummond*'s reasoning to all disability determinations within the Sixth Circuit. *See* 63 Fed. Reg. 29771, 29773, 1998 WL 274052 (June 1, 1998).

Ms. Schandel's reliance on *Drummond* and AR 98-4(6) is misplaced. *Drummond* binds the Commissioner to previous determinations only "absent changed circumstances." 126 F.3d at 842. Here, there is a changed circumstance: Ms. Schandel attained age 18. "When an individual is determined to be eligible for SSI based on disability prior to attaining age eighteen, the Commissioner is required to subsequently redetermine that individual's eligibility for SSI 'by applying the criteria used in determining initial eligibility for individuals who are age 18 or older.'" *Kirchbaum v. Comm'r of Soc. Sec.*, No. 1:24-cv-381, 2024 WL 3992276, at *5 (N.D. Ohio Aug. 29, 2024) (quoting 42 U.S.C. § 1382c(a)(3)(H)(iii)). Not only does the statute require Ms. Schandel show she is disabled under the *adult* standards, but the regulation also contemplates the claimant may receive a different outcome. 20 C.F.R. § 416.987(a)(2) ("We may find that you are not now disabled even though we previously found that you were disabled."). Thus, other courts in this district have consistently concluded "[t]he finding of childhood disability finding is not dispositive nor binding on the adult redetermination." *Lewis v. Comm'r of Soc. Sec.*, No. 1:09-cv-2450, 2011 WL 334850, at *6 (N.D. Ohio Jan. 31, 2011); *see also Kirchbaum*, 2024 WL 3992276, at *7.

Ms. Schandel concedes this change occurred, but nevertheless argues it is entirely immaterial. (ECF #10 at PageID 2318) ("Although this was an age 18 redetermination, the evidence did not change and Plaintiff continues to have marked limitations"). But even if Ms. Schandel's condition did not change, to find that the ALJ was bound by the previous disability determination would negate the Social Security Act's plain language requiring a redetermination and demand the ALJ contradict the regulations. This, the court cannot do.

I thus decline to recommend remand on this basis.

21

E.       **Cherry-picking evidence**

Ms. Schandel next argues that the ALJ "disregarded evidence which did not comport with her desired finding that Plaintiff could engage in substantial gainful activity on a full-time basis." (ECF #10 at PageID 2318-19). While this argument is made alongside other challenges at Step Three, it more goes towards the ALJ's RFC analysis at Step Four. (*See id.* at PageID 2318) (" . . . the RFC assessment must include a narrative discussion . . . ."). It is improper to present disparate challenges to different steps of the sequential analysis. *See, e.g., Elledge v. Comm'r of Soc. Sec.,* No. 1:23-cv-1979, 2024 WL 3237455, at *6 (N.D. Ohio Apr. 9, 2024) (warning Ms. Schandel's counsel for this fault), *report and recommendation adopted,* 2024 WL 3228390 (N.D. Ohio June 28, 2024). But the court need not reject the argument as improperly presented because such arguments of "cherry-picking" by the ALJ are rarely successful in the Sixth Circuit. *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry-picked evidence; the same process can be described more neutrally as weighing the evidence"); *DeLong v. Comm'r of Soc. Sec.,* 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence). Ms. Schandel does not specify which of "the treatment records as detailed above" the ALJ omitted, leaving the court to guess what she refers to. In the rare cases where cherry-picking claims are successful, there is usually a misrepresentation of the record as a whole. *See, e.g., Cross o/b/o K.C. v. Comm'r of Soc. Sec.,* No. 5:20-cv-2787, 2022 WL 574260, at *5 (N.D. Ohio Feb. 25, 2022). But the ALJ accurately described Mr. Bousquet's opinion at Step Three (Tr. 619-21) and accurately described at Step Four Ms. Schandel's ongoing psychological symptoms that persisted despite therapy and medication (Tr. 622-23).

I thus decline to recommend remand on this basis.

22

### F.    Accurate and logical bridge

Ms. Schandel concludes her challenges to Step Three by arguing the ALJ did not build an accurate and logical bridge "between the documentation in the record and the ALJ's finding that Plaintiff was not disabled." (ECF #10 at PageID 2319). The Commissioner does not respond to this argument. Nonetheless, this is merely a conclusion unsupported by any argument. Ms. Schandel does not identify where the ALJ's logic is faulty or jumps to a conclusion nor does she inform the court which specific "documentation in the record" the ALJ overlooked. (*See* ECF #10 at PageID 2319). Thus, this potential argument is forfeited by her failure to develop it. *See McPherson*, 125 F.3d at 995-96; *see also Jones v. Comm'r of Soc. Sec.*, No. 5:24-cv-1690, 2025 WL 1400727, at *8 (N.D. Ohio Apr. 28, 2025) (finding the same argument forfeited for want of development), *report and recommendation adopted*, 2025 WL 1398698 (N.D. Ohio May 14, 2025).

I thus decline to recommend remand on this basis.

## II.    Step Four

Turning to Step Four, Ms. Schandel argues the ALJ erred by concluding Mr. Bousquet's opinion was mostly persuasive but not adopting the mental limitations he opined to or explaining the omissions.[3] (ECF #10 at PageID 2321-22). She relies on *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *4 (6th Cir. May 20, 2024), to argue the ALJ must explain why the RFC omits limitations opined to in a persuasive medical opinion. (*Id.* at PageID 2321). The Commissioner responds the RFC does not conflict with Mr. Bousquet's opinion so no

---

[3]      Ms. Schandel's brief initially mentions the regulatory factors an ALJ uses to assess the persuasiveness of a medical opinion. (*See* ECF #10 at PageID 2320). A reader may expect the argument would follow through with a discussion of how the ALJ erred in applying the regulatory factors or did not adequately explain that application. But Ms. Schandel does not mention those factors anywhere after the first paragraph. Thus, to the extent Ms. Schandel makes such an argument, it is waived by her failure to develop it. *See McPherson*, 125 F.3d at 995-96.

23

explanation was necessary, and that *Kinney* is distinguishable where there is another opinion the ALJ finds more persuasive and here, the ALJ found the prior administrative findings more persuasive than Mr. Bousquet's opinion. (ECF #12 at PageID 2339-41).

The ALJ must assess a claimant's RFC "based on all the relevant medical and other evidence" of record, including the medical opinions. *Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(3)). An ALJ need not incorporate every limitation from a medical source's recommendation, even if it finds that medical source to be persuasive. *Kinney*, 2024 WL 2273365, at *3. But "if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'" *Id.* (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996)) (alteration in original).

Ms. Schandel argues the ALJ omitted four of Mr. Bousquet's opined limitations: (1) she had tendences to be easily distracted and easily depressed; (2) she would be expected to have difficulties in maintaining attention, concentration, and pace in a work setting; (3) she would have difficulties in conforming to social expectations in a work setting; (4) she would be expected to have difficulties with responding appropriately to work place stresses and pressures. (ECF #10 at PageID 2321-22) (citing Tr. 562-63).

The ALJ included into the RFC limitations that Ms. Schandel can:

[P]erform simple, routine, and repetitive tasks, but cannot perform tasks which require a high production rate pace (for example, such as assembly line work), and can make only simple work-related decisions; can have ordinary and customary interaction with supervisors, but should be limited to occasional and superficial interaction with coworkers and the general public ("superficial" meaning no sales, arbitration, negotiation, conflict resolution, or confrontation, no group, tandem, or collaborative tasks, and no management, direction, or persuasion of others); and can respond appropriately to occasional changes in a routine work setting, as long as any

24

such changes are easily explained and/or demonstrated in advance of their gradual implementation.

(Tr. 621). The ALJ found Mr. Bousquet's opinion "mostly persuasive," accepted the "above-noted limitations in areas such as social functioning and handling workplace pressures," and concluded the opinion was "generally consistent with the above residual functional capacity . . . ." (Tr. 624).

The ALJ's decision does not name which exact limitations stemmed from Mr. Bousquet's opinion. Review of Mr. Bousquet's report also provides limited insight as to which of the specific limitations in the RFC originated from his opinion because as he opined Ms. Schandel faces "problems" and "difficulties." (*See* Tr. 560, 562). But the ALJ is not required to recite the opinion "verbatim" in the RFC. *Reeves,* 618 F.App'x at 275. And when the RFC "reflects the limitations" in an opinion, the ALJ need not provide further explanation for his reasoning. *Wilds v. Comm'r of Soc. Sec.*, No. 24-5504, 2025 WL 1001806, at *5 (6th Cir. Mar. 31, 2025).

While the RFC here does not include Mr. Bousquet's opinion verbatim, it does reflect each of the four opined limitations that Ms. Schandel says were omitted. First, Mr. Bousquet opined "the claimant would be expected to have problems with being able to understand, carry out, and remember job instructions and duties" and "influencing these abilities would be her tendencies [t]o be easily distracted and also tendences to become easily depressed." (Tr. 562). The RFC accommodates that by simplifying Ms. Schandel's work to "simple, routine, and repetitive tasks" with "only simple work-related decisions." (Tr. 621). This lowers the number of job duties Ms. Schandel would have to remember and her tasks can be quickly restarted if she is distracted. She also is excluded from doing open-ended tasks like "arbitration, negotiation, conflict resolution"; "group, tandem, or collaborative tasks"; or "management, direction, or persuasion of others." (Tr. 621). Such tasks are likely difficult to do if easily distracted.

Second, Mr. Bousquet opined Ms. Schandel "would be expected to have difficulties to maintain attention and concentration and also her abilities [*sic*] to maintain an acceptable persistence and pace in the work setting." (Tr. 562). The RFC thus prohibits her from doing "tasks which require a high production rate pace (for example, such as assembly line work)" so she does not have to sustain her attention and concentration at a fast pace. (*See* Tr. 621).

Third, Mr. Bousquet opined Ms. Schandel "would be expected to have difficulties with her abilities to conform to social expectations in a work setting." (Tr. 562). The RFC reflects this opinion by limiting her work to involve just "ordinary and customary interaction with supervisors" with "occasional and superficial interaction with coworkers and the general public" and specifically excludes social-based tasks like "arbitration, negotiation, conflict resolution"; "group, tandem, or collaborative tasks"; or "management, direction, or persuasion of others." (Tr. 621).

Last, Mr. Bousquet opined Ms. Schandel "would be expected to have difficulties with responding appropriately to work place stresses and pressures." (Tr. 562). The RFC accommodates these difficulties in several ways. The RFC removes the inherent pressure of "tasks which require a high production rate pace (for example, such as assembly line work)." (Tr. 621). It also removes the interpersonal stress inherent in tasks like "arbitration, negotiation, conflict resolution, confrontation" as well as in tasks involving "management, direction, or persuasion of others" by excluding them completely. (*Id.*). The RFC also limits the amount of day-to-day change in her work by limiting her to "occasional changes in a routine work setting" and also requiring changes be both "easily explained and/or demonstrated in advance of their gradual implementation." (Tr. 621).

Thus, while the RFC does not include Mr. Bousquet's opinions verbatim, the specific limitations it imposes reflect each of the four limitations to which he opined. Thus, after analyzing the RFC, I conclude Ms. Schandel's claim that these opinions were omitted is without merit. (*See* ECF #10 at PageID 2321-22) (citing Tr. 562-63). Because the RFC "reflects the limitations" in Mr. Bousquet's opinion, "the ALJ had no obligation under SSR 96-8p to provide further explanation for his reasoning." *Wilds*, 2025 WL 1001806, at *5.

I thus decline to recommend remand on this basis.

<h2 style="text-align:center">CONCLUSION AND RECOMMENDATION</h2>

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying SSI.

Dated: February 26, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

<h2 style="text-align:center">OBJECTIONS, REVIEW, AND APPEAL</h2>

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to**

object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).